Filed 2/23/26  P. v. Velasquez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EMMANUEL VELASQUEZ,<br><br>    Defendant and Appellant. | D085675<br><br><br>(Super. Ct. No. SCD302298) |


APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Strong Appellate Law and Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Heather B. Arabarri and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Emmanuel Velasquez of one count of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)) and made a true finding that he personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)).  Velasquez admitted a prior strike (§§ 667, subd. (b)–(i), 1170.12, 668) and a prior serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c), 668).  The trial court imposed a prison sentence of nine years, along with certain fees and fines, including a restitution fine of $4,800.  (§ 1202.4, subd. (b).)

Velasquez contends that (1) the trial court prejudicially erred in not instructing on self-defense; and (2) imposition of a $4,800 restitution fine was an abuse of discretion and was unconstitutionally excessive.

We conclude that Velasquez's arguments lack merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In early February 2024, Velasquez had recently moved into an independent living facility after being injured in a car accident.  R.K. was another resident in the facility.  The assault for which Velasquez was prosecuted occurred when R.K. and Velasquez got into an altercation in R.K.'s room.

According to R.K., after he offered to give Velasquez some methamphetamine, Velasquez became angry because R.K. did not want him to smoke the methamphetamine in R.K.'s room.  Velasquez took out a knife and cut R.K.'s neck underneath his chin.  R.K. tried to defend himself by grabbing Velasquez's arm, but Velasquez was still able to inflict three stab wounds to R.K.'s leg.  The men then fought and wrestled until another

---

[1]  Unless otherwise indicated, all further statutory references are to the Penal Code.

resident of the facility broke up the fight. R.K. called 911 and was taken to a hospital with significant injuries, where he stayed for several days.

R.K.'s roommate was present during the incident. He told police that he saw Velasquez take a knife from his pocket and stab R.K. in the leg and neck. At trial the roommate recanted that statement, claiming that R.K. and Velasquez engaged only in a fist fight and that he did not see a knife.

When police arrived on the night of the incident, Velasquez told them that he and R.K were arguing after Velasquez accused R.K. of stealing something. R.K. pulled a knife, and to protect himself, Velasquez jumped on R.K. As a result, R.K "somehow" ended up stabbing himself. Specifically, Velasquez told police, "He pulls his knife off to try to, to try to stick me. Okay. I f**king, I have to f**king like, like I f**king jumped on top of him. Like, dude, stop. Like dog. And f**king, he hit himself . . . somehow. I didn't f**king stab nobody man."

Velasquez testified at trial and described a somewhat different version of events, in which he did *not* see R.K. with a knife and did not jump on R.K. According to Velasquez's trial testimony, R.K. became hostile after Velasquez accused him of stealing some prescription pain medicine. R.K. punched Velasquez in the face, which took Velasquez to the ground. R.K. then punched Velasquez in the back of the head multiple times. Another resident intervened by tackling both R.K. and Velasquez. While the incident was occurring, Velasquez did not see a knife and did not realize that R.K. had been stabbed. Later, Velasquez concluded that R.K. must have taken out a knife while punching him in the back of the head, and that somehow R.K. inadvertently stabbed himself with the knife.

3

Velasquez was charged with committing an assault with a deadly weapon (§ 245, subd. (a)(1)), with the further allegation that he personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)).

The jury found Velasquez guilty as charged, and Velasquez admitted a prior strike (§§ 667, subd. (b)–(i), 1170.12, 668) and a prior serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c), 668). Velasquez was sentenced to nine years in prison.

## II.

## DISCUSSION

A. *The Trial Court Did Not Prejudicially Err in Failing to Instruct on Self-Defense*

We first consider Velasquez's contention that the trial court prejudicially erred by denying his request to instruct the jury with CALCRIM No. 3470 on the right to self-defense.

During the conference on jury instructions, defense counsel requested a self-defense instruction, explaining that the instruction was warranted based on the version of events that Velasquez described to the police on the night of the incident. The trial court denied the request, concluding that a self-defense instruction was not supported by the evidence.

" ' "It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence" ' and ' "necessary for the jury's understanding of the case." ' [Citations.] It is also well settled that this duty to instruct extends to defenses 'if it appears . . . the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 73.) Similarly, "[a]n instruction requested by a defendant need only be given 'if it is supported by substantial evidence, that is, evidence

4

sufficient to deserve jury consideration.' " (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) Thus, "[a] trial court has no duty to instruct the jury on a defense—even at the defendant's request—unless the defense is supported by substantial evidence." (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355; see also *In re Christian S.* (1994) 7 Cal.4th 768, 783 ["[a] trial court need give a requested instruction concerning a defense *only if there is substantial evidence to support the defense.*"].)

"We review a trial court's failure to instruct on a defense theory de novo and view the evidence in the light most favorable to the defendant in doing so." (*People v. Ibarra* (2024) 106 Cal.App.5th 1070, 1081.)

" 'To justify an act of self-defense for [an assault charge under Penal Code section 245], the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him. . . .' The threat of bodily injury must be imminent . . . and ' . . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064–1065, citations and italics omitted.)

As he did at trial, Velasquez argues that substantial evidence supports a self-defense instruction for the charge of assault with a deadly weapon based on the statements that he made to the police after the incident.[2] As we

---

[2]     During the conference on jury instructions, there was discussion about whether the jury should be instructed on the concept of accident as set forth in CALRIM No. 3404. The trial court ruled that the instruction was not supported by the evidence. An argument heading in Velasquez's opening brief states that it was prejudicial error "to refuse to instruct the jury on self-defense *or accident.*" (Capitalization omitted, italics added.) However, because Velasquez fails to present any substantive argument regarding the concept of accident in the body of his brief, the issue is not properly presented, and we accordingly do not address it. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to

have explained, Velasquez told the police that after R.K. pulled a knife, Velasquez jumped on R.K., and that, as a result, R.K "somehow" inadvertently ended up stabbing himself four times.  According to Velasquez, a self-defense instruction was warranted because the jury could find that Velasquez's act of jumping on R.K. was the assault that proximately caused R.K.'s injuries, whether or not Velasquez was holding a knife when he committed the assault.  However, because Velasquez claimed to have jumped on R.K. to protect himself, that assault would have been committed in self-defense.

Velasquez's argument fails because the crime that the People charged in this case was assault *with a deadly weapon*.  (§ 245, subd. (a)(1).)  For that crime, the jury was instructed that the People were required to prove, among other elements, that "Velasquez "did an act *with a deadly weapon* other than a firearm that by its nature would directly and probably result in the application of force to a person," and "[w]hen [Velasquez] acted, he had the present ability to apply force *with a deadly weapon*."  (Italics added.) However, the version of events Velasquez related to the police could not support a conviction for assault with a deadly weapon because Velasquez denied committing any act *with* a deadly weapon or applying any force *with* a deadly weapon.  Velasquez did not claim that he had any weapon of his own, and he did not suggest that he tried to use R.K.'s weapon against R.K. in any manner at all.  Instead, as Velasquez told the police, if R.K. did end up getting hurt by his own knife, it was because R.K. "hit himself . . . somehow." Accordingly, the record contains no evidence to support a finding that

---

disclose the reasoning by which the appellant reached the conclusions he wants us to adopt."].)

6

Velasquez did assault R.K. with a deadly weapon, but that he acted to defend himself.

In sum, because the jury could not find, based on the evidence presented at trial, that Velasquez committed an assault with a deadly weapon in order to defend himself from R.K., the trial court properly declined to instruct the jury regarding self-defense.

B.      *Velasquez's Challenge to the Amount of the Restitution Fine*

Next, we consider Velasquez's challenge to the trial court's imposition of a restitution fine in the amount of $4,800 pursuant to section 1202.4, subdivision (b).

Section 1202.4, subdivision (b) provides that, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).) The amount of the restitution fine is "at the discretion of the court and commensurate with the seriousness of the offense" and for a felony conviction "shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)." (§ 1202.4, subd. (b)(1).) Further, in setting a fine in excess of the $300 minimum the court "shall consider any relevant factors" including "the defendant's inability to pay." (§ 1202.4, subd. (d).) "Consideration of a defendant's inability to pay may include the defendant's future earning capacity. A defendant shall bear the burden of demonstrating the defendant's inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required." (§ 1202.4, subd. (d).) We apply an abuse of discretion standard when reviewing a challenge to the amount of a restitution fine. (See *People v.*

*Ramirez* (2021) 10 Cal.5th 983, 1043 (*Ramirez*); *People v. Potts* (2019) 6 Cal.5th 1012, 1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321.)

Further, a restitution fine under section 1202.4 constitutes punishment subject to the constitutional proscription against excessive fines and may be challenged on that basis. (*People v. Kopp* (2025) 19 Cal. 5th 1, 13.) "[T]he 'touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.' " (*Id.* at p. 23.)

Here, the probation officer's report recommended a restitution fine of $4,800, and a prison sentence of 16 years. [3]

At the sentencing hearing, after the trial court imposed a prison sentence of nine years, but before it had addressed fine and fees, Velasquez interrupted with a lengthy outburst about how the outcome "wasn't fair" and he had been "railroaded again." The trial court did not react to Velasquez's outburst and instead proceeded with the rest of the sentencing hearing. Shortly thereafter, the trial court asked the probation officer, "And what would be the restitution fine for the sentence the Court has imposed?"

---

[3]    The probation officer's report did not explain the basis for the recommendation of a $4,800 restitution fine. However, section 1202.4, subdivision (b)(2), sets forth an optional method for arriving at the amount of the restitution fine based on the number of felony counts and the length of the sentence. (§ 1202.4, subd. (b)(2) ["In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."].) The probation officer's report recommended a sentence of 16 years. For that sentence, application of the optional approach set forth in section 1202.4, subdivision (b)(2) results in a restitution fine of $4,800.

Velasquez then engaged in another outburst, stating "I can't pay. I'm homeless. I'm not going to pay that." The trial court continued to ignore Velasquez and spoke with the probation officer, who confirmed that the recommended restitution fine was $4,800. The trial court then imposed a restitution fine in that amount. Defense counsel did not object to the probation officer's calculation of the $4,800 restitution fine, and he did not argue that the restitution fine should be set at a lesser amount based on Velasquez's inability to pay or any other consideration. When the trial court asked defense counsel whether his client wished to be present for any victim restitution hearing, Velasquez interjected, "I can't pay it. I'm homeless. I'm not going to pay restitution."

Velasquez argues on appeal that the $4,800 restitution fine "was excessive under the Eighth Amendment and constituted an abuse of discretion." In a brief argument, and without any citation to the record, Velasquez purports to support both of these contentions by asserting that he "presumably had no earnings other than possibly disability," was "living in subsidized housing," had "physical limitations" that "would prevent him from working in prison," had no economic gain from the crime, and his offense was "not related to other illegal activities."[4]

The People argue that Velasquez's challenge to the amount of the restitution fine is forfeited because defense counsel did not raise an objection at the sentencing hearing. " ' " '[A] constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to

---

[4] There is no indication that any of these facts were presented to the trial court in connection with the sentencing hearing. Because Velasquez refused to participate in the probation interview, the probation officer's report contains no information regarding Velasquez's financial or physical circumstances at the time of sentencing.

make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' " (*People v. McCullough* (2013) 56 Cal.4th 589, 593.) Thus, a defendant forfeits a challenge to the amount of a restitution fine if that challenge is not raised in the trial court. (*People v. Nelson* (2011) 51 Cal.4th 198, 227 [defendant forfeited a challenge to the amount of a restitution fine, based on inability to pay, because it was not raised at the sentencing hearing]; *People v. Navarro* (2021) 12 Cal.5th 285, 344 [same].) The forfeiture doctrine applies to constitutional arguments based on the Eighth Amendment. (*People v. Baker* (2018) 20 Cal.App.5th 711, 720 [an Eighth Amendment challenge requires a " 'fact specific' inquiry and is forfeited if not raised below"].)

Although acknowledging that defense counsel did not dispute the amount of the restitution fine at the sentencing hearing, Velasquez contends that the forfeiture doctrine does not apply because he raised the issue himself during the sentencing hearing, during his outburst, when he said "I can't pay. I'm homeless. I'm not going to pay that." We reject the argument. "A criminal accused has only two constitutional rights with respect to his legal representation, and they are mutually exclusive. He may choose to be represented by professional counsel, or he may knowingly and intelligently elect to assume his own representation. [Citation.] An accused who chooses professional representation, rather than self-representation, has no right to participate as cocounsel." (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1162.) "Whether to permit a defendant represented by counsel also to speak on his own behalf is within the discretion of the trial court." (*People v. Sanchez* (1977) 72 Cal.App.3d 356, 359.) " 'California law has been interpreted to permit the trial court to ignore the defendant and to solely address his or her counsel.' " (*Ibid.*) Accordingly, because Velasquez was represented by

10

counsel, the trial court was not required to treat Velasquez's outburst as an attempt to challenge the amount of the restitution fine.

Velasquez also argues that we should not apply the forfeiture doctrine because any argument by defense counsel for a reduction in the amount of the restitution fine would have been futile. (See *People v. Welch* (1993) 5 Cal.4th 228, 237 ["Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile."].) As we understand the argument, Velasquez contends that because the trial court did not reduce the amount of the restitution fine based on his outburst, the trial court also would not have reduced the amount of the restitution fine had defense counsel raised the issue. The argument lacks merit. The record contains no indication of how the trial court might have ruled on the amount of the restitution fine had the issue been properly raised by defense counsel.

## DISPOSITION

The judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:

BUCHANAN, J.

CASTILLO, J.

11